UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| John Wesley WILLIAMS,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>Kathleen ALLISON, et al.,<br><br>　　　　　　　　　　　Defendants. | Case No.: 24-cv-1382-AGS-AHG<br><br>**ORDER GRANTING MOTION FOR RECONSIDERATION (ECF 6)** |

This Court previously denied plaintiff John Williams's request to proceed without paying the required court-filing fee, finding that his allegations did not present an "imminent danger of serious physical injury." (ECF 5, at 2.) Because Williams already has three litigation strikes—that is, three prisoner lawsuits dismissed as "frivolous, malicious, or fail[ing] to state a claim upon which relief may be granted"—he may only proceed here without prepaying fees if he plausibly alleges that he "is under imminent danger of serious physical injury." *See* 28 U.S.C. § 1915(g); (*see also* ECF 5, at 2 (collecting his previous dismissals)). Williams now requests reconsideration, arguing that the Court wrongly concluded that his plumbing-related allegations do "not meet the imminent danger of serious physical injury requirement." (ECF 6, at 2.)

Reconsideration is warranted when "the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Williams offers no new evidence nor legal changes, so the Court's assessment is limited to whether it clearly erred. "[C]lear error occurs when the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *American Gen. Life Ins. Co. v. Le*, No. EDCV 22-0876JGB (KKX), 2024 WL 3005866, at *2 (C.D. Cal. May 17, 2024).

To succeed, Williams must demonstrate that he is facing an "imminent" "danger of serious physical injury." *See Andrews v. Cervantes*, 493 F.3d 1047, 1055 (9th Cir. 2007).

An allegation is "imminent" if it exists "at the time of filing." *Id.* Williams's complaint alleges that the prison's "ongoing" plumbing issues "persist at the time of filing this action" (ECF 1, at 12), so the circumstances meet the "imminent" requirement, *see Andrews*, 493 F.3d at 1055.

And Williams's plumbing allegations also satisfy the "danger of serious physical injury" element. "A physical injury is 'serious' for purposes of § 1915(g) if it has potentially dangerous consequences such as death or severe bodily harm." *Gresham v. Meden*, 938 F.3d 847, 850 (6th Cir. 2019). Williams alleges that "raw sewage" has been "over-flowing from the sink drain inside [his] assigned cell quarters." (ECF 1, at 14.) This "caus[es]" a "ferocious stink that provoke[s] nausea, cho[]king, and vomit[ing]" and "expos[es]" him "to airborne contaminates," such as "hepatitis, bacterial infection, and covid-19." (*Id.* at 5, 14.) A feces-filled quarters that causes vomiting, choking, and exposure to those diseases "has potentially dangerous consequences," including "severe bodily harm." *See Gresham*, 938 F.3d at 850; *see also Andrews*, 493 F.3d at 1055 (finding that alleging a "risk of contracting" "hepatitis . . . more than plausibly raises the specter of serious physical injury").

The Court **GRANTS** reconsideration, reopens the case, and will screen Williams's complaint. *See* 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b).

## SCREENING

The Court must dismiss the revived complaint if it "fails to state a claim." 28 U.S.C. § 1915(e)(2)(B); *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

Williams makes his allegations under 42 U.S.C. § 1983, and he divides his complaint into three "counts" that are all premised on sewage-related Eighth Amendment allegations against California Department of Corrections and Rehabilitation Secretary Kathleen Allison, Governor Gavin Newsom, Warden James Hill, "Chief Deputy warden" R. Buckel, "Chief Deputy warden" M. Palmer, Correctional Sergeant Juarez, and Correctional Officer Beltran. (*See generally* ECF 1.)

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). To establish § 1983 liability, Williams must show both "(1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012). The second requirement, that the defendants acted "under color of state law," is satisfied here given all the defendants "may fairly be said to be" "state actor[s]," and Williams is an inmate "for whom the State is responsible." *See West v. Atkins*, 487 U.S. 42, 49 (1988).

As to the first requirement, Williams alleges that the defendants violated his Eighth Amendment "right to be free from cruel and unusual punishment." (ECF 1, at 4.) To succeed, Williams must show that the officials acted with "deliberate indifference" to a "substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

Prison plumbing issues create a substantial risk of serious harm, so as to violate an inmate's right to be free from cruel and unusual punishment, when the plumbing is "in such disrepair as to deprive inmates of basic elements of hygiene and seriously threaten their physical and mental well-being." *Hoptowit v. Spellman*, 753 F.2d 779, 783 (9th Cir. 1985). Williams's sewage scenario—which involves a recurring "raw sewage" "over-flow[]" in his "cell quarters" (ECF 1, at 14)—"deprive[s]" him "of basic elements of hygiene and seriously threaten[s]" his "physical and mental well-being," *see Hoptowit*, 753 F.2d at 783. So he has sufficiently alleged the "substantial risk" prerequisite. *See Farmer*, 511 U.S. at 828.

The question remains, then, whether defendants were deliberately indifferent to this impending harm. The "deliberate indifference" standard is met when an "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

"Since as early as January 2022," according to the complaint, defendants "Allison, Newsom, Hill, Buckel, and Palmer have been made aware through endless plum[b]ing work orders and plum[b]ing related complaints" that there was a "constant and reoccurring" "overflood of feces, sewage, and urine" causing a "risk of exposure to airborne contaminates like hepatitis, bacterial infection, and covid-19." (ECF 1, at 5.) And, as to defendants Juarez and Beltran, Juarez "responded" to one of the "waste spill[s]" by "instructing Defendant Beltran to have inmates" "use a mound of wool blankets to soak up the waste." (*Id.* at 9.) Then, "after about 2–3 hours of constant waste flooding," the two of them wanted to "go home" so they left "the waste spill" unresolved. (*Id.*) This was not the only instance in which Williams and his fellow inmates were left to their own devices to "remove the waste floods from inside cell quarters without any safety . . . or protective gear." (*Id.* at 7.)

True, a plumber was summoned in response to at least some of the recurring sewage outbreaks. (ECF 1, at 10.) But according to the "plum[b]er who regularly respond[s] to each waste spill," anytime he "fix[es] one flood in one area, it happens somewhere else." (*Id.*) On one occasion, a wastewater "overflow" started "in the facility dining hall," "rotate[d] to" "one of the two toilets and urinals" in the "exercise yard," and then flooded from the "shower drains inside one of the . . . housing units." (*Id.* at 6–7.)

Williams's Eighth Amendment claims against all defendants thus survive the "low threshold for proceeding past the screening stage." *See Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012). The defendants allegedly knew of the facts underlying the dangerous plumbing deficiencies and drew "the inference" from those facts that a "substantial risk of serious harm exists" on account of the feces-filled facilities. *See Farmer*, 511 U.S. at 837;

*see also Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (finding that officials acted with deliberate indifference when "the risk posed by the deprivation" was "obvious").

## CONCLUSION

The Court orders as follows:

1. Williams's motion to proceed IFP is **GRANTED**.

2. The Secretary of the CDCR, or his designee, must collect the $350 filing fee from Williams's prison trust account in monthly payments equal to 20% of the preceding month's income each time the amount in his account exceeds $10, and forward those payments to this District's Clerk of Court. 28 U.S.C. § 1915(b)(2).

3. The Clerk of Court must serve a copy of this order on Jeff Macomber, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California 94283-0001.

4. The Clerk must issue summonses as to Williams's complaint (ECF 1) for all defendants and forward the summonses to Williams along with a blank U.S. Marshal Form 285. For use in serving these defendants, the Clerk will provide Williams with certified copies of the complaint and summonses. Upon receipt of this "In Forma Pauperis Package," Williams must complete the USM Form 285 as completely and accurately as possible, *include an address where that defendant may be found and/or subject to service*, and return the forms to the United States Marshal according to the instructions the Clerk provides in the letter accompanying the package. *See* S.D. Cal. CivLR 4.1(c).

5. The U.S. Marshal must serve a copy of the complaint and summons upon defendants as directed by Williams on the USM Form 285. Costs of service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

6. After service has been completed by the U.S. Marshal, Williams must serve upon defendants, or if appearance has been entered by counsel, upon defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration. *See* Fed. R. Civ. P. 5(b). With every original document Williams seeks to file with the Clerk, Williams must include a certificate stating the manner in which a true

1  and correct copy of that document has been served on defendants or their counsel, and the
2  date of that service. *See* S.D. Cal. CivLR 5.2. The Court may disregard any document that
3  has not been properly filed with the Clerk or that fails to include a Certificate of Service
4  upon a defendant or defense counsel.

5  Dated:  May 21, 2025

_____
Hon. Andrew G. Schopler
United States District Judge